Alfred Joshua, MD, MBA, CCHP-P, FAAEM

P.O. Box 5000 PMB 525 Rancho Santa Fe, CA 92067

## I. INTRODUCTION

My name is Alfred Joshua, MD, MBA, CCHP-P, FAAEM. My business address is P.O. Box 5000 PMB 525 Rancho Santa Fe, CA 92067. I was retained by the Law Office of Gutglass, Erickson, Larson & Schneider, S.C. at the request of Attorney Maria Schneider on case <u>Estate of Ruth Freiwald v Adeyemi Fatoki MD et al.</u> (Case No: 18-CV-896) My rate for consulting is $450 per hour and for court or deposition testimony is $600 per hour.

## II. BACKGROUND AND EDUCATION

I received my Doctor of Medicine from the State University of New York, Syracuse (Upstate University), and completed my post-graduate residency training at UC San Diego Emergency Medicine Residency program in San Diego. I completed a two-year fellowship in Hospital Administration at UC San Diego under the mentorship of the CEO, CMO and President of the Medical Group. I have been a licensed Physician and Surgeon in the State of California and have maintained my board certification in Emergency Medicine (ABEM) since July 2012. I have worked in the healthcare industry as an emergency medicine physician, primary care, detoxification services, and correctional medicine and administration. Additionally, I have a Master of Business Administration (MBA) degree from the University of California, Irvine. I received a Certification for Certified Correctional Health Professional (CCHP) from National Commission of Correctional Healthcare (NCCHC). I have also received the CCHP physician specialty certification (CCHP-P) upholding the highest standards of correctional healthcare There are only around 70 correctional physicians across the country who have received the designation as of November 2017.

    A. <u>Professional Experience</u>

I was selected in 2013 to lead the San Diego County Sheriff's Medical Services Division as Chief Medical Officer to design and manage a medical system that provides comprehensive medical care for the 91,000+ inmate/patients who are annually booked with a daily census of 5,800+ inmate/patients who are housed at seven detention facilities throughout the San Diego region covering 4,562 square miles. I have been designing an innovative managed care model for the county jails in order to meet the medical and financial challenges of AB 109, or Public Safety Realignment. I led the creation of a Managed Care Department for central utilization review within the Sheriff's Department and established new value-based hospital contracting in inpatient and outpatient medical care over past two years. I have revised or created 50+ Departmental Medical policies to standardize medical care across seven facilities as well as revising Sheriff's department medical and psychiatric formulary to improve quality of care for patients. I have redesigned Mental Health care with a new Inmate Safety Program that is designed to reduce

1

EXHIBIT 44

EXHIBIT 240 Joshua

suicide deaths, attempts and safety cell placements. I have led the creation of a Telehealth program which provides and expedites timely access to outpatient specialty care for inmates. Prior to the Sheriff's Department, I served as the Senior Medical Officer in Healthcare Reform at Tri-City Medical Center and as Medical Director for Volunteers of America, a non-profit organization that assists the homeless and those rehabilitating from drugs and alcohol. I have completed a two-year hospital administrative fellowship at UC San Diego after completion of my emergency medicine residency. I have worked clinically in the Emergency department at UC San Diego and at Tri-City Medical Center and currently practice clinically at the Veterans Affairs Emergency Department. I served on the Board of Directors for San Diego Health Connect a leading national health information exchange platform located in San Diego and the Council of Mentally Ill Offenders (COMIO) and was appointed by the Speaker of the House of California in 2015.

In addition to the above, I had regularly met with other jail administrators and medical directors from several jurisdictions in Southern California to discuss emerging topics and best practices. I have served as a subject matter expert for the Medical/Mental Health Workgroup for Board of State and Community Corrections (BSCC) in 2016 to make the most recent revisions to Title 15 regulations, which govern jail correctional entities in the State of California. I also review medical records and conduct expert witness work both within my county and in other states in the correctional healthcare field. I left the San Diego Sheriff's department in June 2018. Since July 2018, I serve as a correctional healthcare consultant to assist organizations and entities with improving the quality and delivery of care for inmate populations.

B. Professional Memberships

I am a member of the following organizations:

- American College of Correctional Physicians (ACCP)
- American Academy of Emergency Medicine (AAEM)
- American Medical Association (AMA)
- American Correctional Health Services Association (ACHSA)
- National Commission on Correctional Healthcare Association (NCCHC)

### III. PRESENTATIONS

1. Public Safety Group CAO Quarterly Presentation Panel – Mental Health in Regards to Public Safety Realignment – February 2014
2. Neighborhood House Association – Mental Health Presentation – March 2014
3. Citizens Law Enforcement Review Board Presentation – Suicide Prevention Strategies – June 2014
4. Open Minds Presentation – Mental Health in San Diego County Jails – August 2014
5. California State Sheriffs' Association – Affordable Care Act – August 2014

2

Case 1:18-cv-00896-WCG    Filed 03/04/20    Page 2 of 8    Document 109-4

6. National Commission on Correctional Health Association – Viewing Correctional Healthcare as a Payor – October 2014
7. Honorary Sheriff Deputy Association- Redesigning Medical and Mental Healthcare in San Diego County Jails: A life and death challenge 2015
8. Police Chief's Presentation: Redesigning Medical and Mental Healthcare: 5 Year Plan
9. San Diego Mental Health Coalition: Mental Health care in San Diego Jails – April 2015
10. Citizens Law Enforcement Review Board Presentation – Suicide Prevention Strategies – July 2015
11. Behavioral Health Advisory Board- Nov 2015
12. San Diego Law Society- Redesigning Mental Health Care in Jails Nov 2015
13. National Commission on Correctional Health Association – Inmate Safety Program – April 2016
14. Grand Jury Presentation- Mental Health San Diego Jails July 2016
15. California Coalition for Mental Health - Correctional Mental Health Care September 2016
16. San Diego Organization of Healthcare Leaders (SOHL) Correctional Healthcare and Information Technology: San Diego County Jails and San Diego Health Connect October 2016
17. American Correctional Health Services Association - Inmate Safety Program- San Diego Jails October 2016
18. Mental Health Services OAC: Jail Mental Health Services (Panel Discussion)- March 2017
19. Past Grand Jury Association- June 2017: Overview of Jail Medical and Mental Health Services
20. California Crisis Intervention Training Association (CCITA): Redesigning Medical and Mental Health Services in Jails August 2017
21. Health Trained Deputy Sheriff Training- August 2017
22. Emergency Medical Oversight Committee (EMOC) Presentation: Medical and Mental Health Care in Jails- February 2018
23. Citizens Law Enforcement Review Board (CLERB): Future of Jail Medical and Mental Health Services February 2018
24. UC San Diego Department of Psychiatry Presentation: Correctional Medicine- March 2018
25. National Commission on Correctional Health Association – Evolution of a Suicide Prevention Protocol – April 2018
26. National Commission on Correctional Health Association – Hepatitis A Outbreak and a County Jail Response – April 2018
27. Mental Health Symposium- Jail Mental Health Expert Speaker – April 2018
28. Western American Correctional Health Services Association - Telemedicine In Correctional Healthcare- October 2018
29. National Commission on Correctional Health Association – Creating a TeleHealth Infrastructure for your Facility– October 2018

## IV. PUBLICATIONS

1. Joshua A, Chan T., Castillo E.; A Tool for Emergency Department Throughput: Using Maximum ED Bed Time to Reduce Wait Times and the Number of Left Without Being Seen Patients Annals of Emergency Medicine 9/2010 (Abstract)
2. Nordt SP, Minns A, Carstairs S, Kreshak A, Campbell C, Tomaszewski C, Hayden SH, Clark RF, Joshua A, Ly BT: Mass sociogenic illness initially reported as carbon monoxide poisoning. J Emerg Med 2012;42(2):159-161.
3. Campbell, Joshua, Medak, et al. Is ultrasound-guided subclavian vein cannulation more successful than traditional methods? Academic Emergency Medicine. 2011; Blackwell Publishing Ltd. Vol 18(5) S211. (abstract)
4. Karla DW, Bovet J, Haynes B, Joshua A, et al. Training law enforcement to respond to opioid overdose with naloxone: Impact on knowledge, attitudes, and interactions with community members. *Drug and Alcohol Dependence* 2016
5. Degner N, Joshua A, et al. Comparison of Digital Chest Radiography to Purified Protein Derivative for Screening of Tuberculosis in Newly Admitted Inmates. Journal of Correctional Healthcare 2016 Vol. 22(4) 322-330

**Book Chapters:**

1. Joshua A: Blunt neck trauma. In: Rosen and Barkin's 5-Minute Emergency Medicine Consult (fourth edition). Schaider J, Hayden SR, Wolfe R, Barkin RM, Barkin A, Shayne P, Rosen P (Eds.); Philadelphia: Lippincott Williams & Wilkins, 2010,
2. Joshua A: Subarachnoid hemorrhage. In: Rosen and Barkin's 5-Minute Emergency Medicine Consult (fourth edition). Schaider J, Hayden SR, Wolfe R, Barkin RM, Barkin A, Shayne P, Rosen P (Eds.); Philadelphia: Lippincott Williams & Wilkins, 2010
3. Joshua A: Abdominal Imaging, Trauma. In: Rosen and Barkin's 5-Minute Emergency Medicine Consult (fourth edition). Schaider J, Hayden SR, Wolfe R, Barkin RM, Barkin A, Shayne P, Rosen P (Eds.); Philadelphia: Lippincott Williams & Wilkins, 2013

## V. CASES (Involving Deposition or Trial Testimony)

1. Brummett v. County of San Diego (Deposition) April 2014 (CASE NO. 12-CV-1428-BAS (BGS)

2. Brummett v. County of San Diego (Trial testimony) November 2014 (CASE NO. 12-CV-1428-BAS (BGS)

3. Torbert vs County of San Diego (Trial Testimony)- December 2015 (CASE NO. 11-CV-2953-DMS (WMC)

4. The Estate of Ruben Nunez vs. County of San Diego (Deposition)- May 2017 (CASE NO. 16-CV-1412-BEN (MDD)

5. Williams v. Gore (Trial Testimony)- June 2017 (CASE NO. 15-CV-0654-AJB(PCL)

6. Howze v. USA, U.S. District Court for the Eastern District of Arkansas (Deposition)- June 2017 (Case No. 2:16-CV-0003)

7. Jones v. Gardiner (Trial Testimony)- October 2017 (CASE NO. 14-CV-2477-MMA(MDD))

8. Turner v. County of San Diego (Trial Testimony)- January 2018 (CASE NO. 17-CV-285-WQH-MDD)

9. Villalon v. Cameron County (Deposition)- February 2018 (CASE NO. CA NO 1:15-cv-00161)

10. NeSmith v County of San Diego (Deposition) February 2018 (CASE NO. 3:2015cv00629)

11. Nagy v County of Orange (Deposition) March 2018 (CASE NO. 30-2015-00827446-CU-PP-CJC)

12. Scott et al. v Clarke et al. (Deposition) April 2018 (CASE NO. 3:12-cv-36)

13. Russell v County of Orange (Deposition) May 2018 (CASE NO. 17-cv00125 JLS (DFM)

14. The People v Avignone et al. (Hearing) May 2018 (Super Ct. SCD250640)

15. Scott et al. v Clarke et al. (Trial Testimony) June 2018 (CASE NO. 3:12-cv-36)

16. Nishimoto v County of San Diego (Deposition)- November 2018 (CASE NO. 3:16-cv-01974-BEN-JMA)

## VI. MATERIALS REVIEWED

In preparation for forming the opinions expressed below, in addition to my experience in the correctional healthcare field, I have reviewed the following materials:

1. Complaint (26 pages)
2. National Commission of Correctional Health Standards, Jails 2014
3. Prevea Health Records (88 pages)
4. Brown Community Treatment Center (14 pages)
5. St. Vincent Hospital Green Bay Medical Records (492 pages)
6. Bellin Health Records (126 pages)
7. Brown County Jail Medical Records (268 pages, 157 Pages)- 425 pages
8. Correct Care Solutions Records (18 pages)
9. Expert Report of Dr. John Greist (21 pages)
10. Sentencing Records (16 pages)
11. Correct Care Solutions Policies and Procedures (9 pages)
12. Deposition of Matthew Fett (110 pages)
13. Deposition of Emily Blozinski LPN (237 pages)
14. Deposition of Jessica Jones RN (299 pages)
15. Deposition of Dr. Fatoki (266 pages)

## VII. SUMMARY OF DOCUMENT REVIEW

| DATE | SUMMARY OF EVENT |
|---|---|
| February 8, 2016 | Ms. Freiwald went to Emergency department at St. Vincent Hospital and seen by ER physician Dr. Robert Beyer after patient was involved in motor vehicle accident by pulling her car onto a |

| | |
|---|---|
| | semi-truck after intentionally trying to harm self by overdosing on 90 tablets of clonazepam (Klonopin) and cutting wrist. Trauma workup completed including imaging studies. Admitted to ICU. |
| February 9, 2016- February 12, 2016 | Ms. Freiwald admitted to Nicolet Psych Center at Brown County Community Treatment center for suicide attempt. Stated she was stressed out from relationship issues and loss of business. |
| March 10, 2016 | Prevea Health: Seen by Vardia Dawn LPC. Ms. Freiwald referred for outpatient therapy by Dr. Sheets on March 3, 2016 and had multiple sessions on a weekly basis.<br><br>Outpatient medications: Gabapentin, Clonazepam, Aspirin, Diclofenac, fluoxetine, lisinopril-HCTZ, multivitamins, Ambien<br><br>Past Medical History: Anxiety, Arthritis, Major Depressive Disorder, Hypertension, Diverticulitis, Lumbago, Post Traumatic Stress Disorder (PTSD) |
| October 27, 2016 | Ms. Freiwald reported to Brown County Jail. Given HUBER privileges by judge to attend her classes at NWTC. Suicide Screening Questionnaire completed by D. Peters. States previous suicide attempt in February 8, 2016. Booking Observation Questions completed, and 3-day BP check ordered. Outpatient pharmacy medication verification sent to Walgreens. |
| October 28, 2016 | Ms. Freiwald placed Inmate Request for Medical Care Form related to migraine headache, blood pressure, and anxiety. |
| October 29, 2016 | Registered Nurse responded to Inmate Request Form that meds to be reviewed by physician and next available appointment for BP check.<br><br>13:00: Dr. Fatoki receives a phone call from Nurse related to prescribing Ms. Freiwald medications for her chronic medical and mental health conditions. Antihypertensive and antidepressant medications prescribed. Dr. Fatoki placed an order to monitor for signs of withdrawal related to Klonopin and Gabapentin. |
| October 30, 2016 | Ms. Freiwald placed Inmate Request for Medical Services form related to medications and |
| October 31, 2016 | Nurse responded to Inmate Request Form from the day before. |
| November 2, 2016 | Ms. Freiwald part of HUBER program and able to work outside of jail. While outside of jail setting, Ms. Freiwald stepped in front of truck and suffered major trauma and transported to hospital. Ms. Freiwald succumbs to her injuries and dies at St. Vincent's hospital. She sent an email (@7:42AM) to patient's brother, Chuck stating reason for suicide. |

Case 1:18-cv-00896-WCG    Filed 03/04/20    Page 6 of 8    Document 109-4

## VIII. OPINION

Based on my review of the documents provided, and my education and training, as well as administrative and clinical experience in both the correctional health care and hospital setting, it is my opinion that there is no evidence Dr. Fatoki fell below the standard of care or provided anything other than appropriate care related to the medical care and medication management of Ms. Freiwald. Also based on review it is also my opinion that there is no evidence of systemic deficiencies or deviations of the standard of care by the clinical nursing staff.

Ms. Ruth Freiwald was a 51-year-old female who suffered from Major Depressive Disorder with psychotic features, Generalized Anxiety Disorder, and Post Traumatic Stress Disorder. Her mental health records prior to her incarceration from Bellin Health, Prevea Health and Nicolet Psychiatric Center shows an individual who failed psychiatric medication treatment even when on Gabapentin (Neurontin) and Clonazepam (Klonopin). Contrary to the assertions made by Plaintiff in the Complaint, Ms. Freiwald's mental health problems were not well controlled on the same medications that the Plaintiff Expert Dr. Greist or her family is stating caused her suicide attempt (Klonopin and Neurontin). On February 8, 2016, eight months prior to her incarceration, Ms. Freiwald overdosed on 90 tablets of Klonopin, slashed her wrist, and then tried to veer her car into a truck in an attempt to kill herself. At this time, she was prescribed both Klonopin and Neurontin. The cause of this incident seems to be related to relationship issues which stressed her to not only try to take her own life but with the vehicle attempt, could have seriously injured or killed others.

Dr. Fatoki was the regional medical director of Brown County Jail when Ms. Freiwald was incarcerated on October 27, 2016. He is board certified in addiction medicine and thus uniquely knowledgeable about the risks and benefits of medications such as Clonazepam and Gabapentin. In fact primary care physicians manage and prescribe psychiatric medications for the majority of patients. He was notified by the Brown County Jail nursing staff about medications Ms. Freiwald was on previously on October 29, 2016 at 13:00. He appropriately reviewed the medications and prescribed her antihypertensives and antidepressant medications. He appropriately did not prescribe Clonazepam nor Gabapentin and outside records for gabapentin was sent out by the registered nurse for Dr. Fatoki to review prior to making a decision. He gave instructions on looking for signs of withdrawal for Clonazepam while the registered nurse sent a verification from the pharmacy for gabapentin which are both the standard of care. Clonazepam and gabapentin are medications that are not only highly abused in a correctional setting but also carry serious risks when combined with other medications. Her overdose of Clonazepam on February 8, 2016 should show how serious the effects of these medications are in respiration rate and mental status. It should be noted that a suicide screening questionnaire and Booking Observation were completed on October 27, 2016 on Ms. Freiwald and no assessment was made where she posed an immediate suicide risk. If an immediate suicide risk was found, she would have been placed on suicide precautions inside the jail.

Based on the deposition of Dr. Fatoki by Plaintiff attorney, there are a number of points that need clarification. Every physician who sees a patient operates their clinical care under their medical license and must exercise independent clinical judgement when prescribing any medications. The Plaintiff attorney glosses over this detail by equating Dr. Fatoki's role to a technician that merely continues a prescription order from the outside physician or court. This is

7

what sets physicians apart from many other fields. Physicians have a sworn obligation to do no harm. Thus, they have to independently assess the clinical situation and determine based on their clinical judgment if a medication is warranted or not. It can be stated that the physician who placed Ms. Freiwald back on Clonazepam one month after she overdosed on 90 pills of Clonazepam was acting recklessly in prescribing a medication which she used as a means to end her life. It should also be noted that her serious previous suicide attempt in February 2016 was at the time of her being on both Clonazepam and Gabapentin. It was noted that a relationship stressor and failed business caused her to try three different methods to end her life. The Plaintiff tries to make a causal link between cessation of Gabapentin and Clonazepam and her suicide; this is simply not true. While studies may show a correlation that could be explained by other factors, there is no causation stated in the clinical literature. If this had been the case, there would be a Blackbox warning from the FDA related to cessation of Gabapentin and Clonazepam causing suicide. What is stated in the literature is the risk of life threatening benzodiazepine withdrawal with abrupt cessation. Ms. Freiwald did not exhibit any signs of benzodiazepine withdrawal and the visual observation done to assess this showed no evidence that she suffered from tremors or cardiovascular instability. There are many factors that can correlate to increased suicide risk with drug and alcohol withdrawal being among them. There is no evidence based on the records that Ms. Freiwald experienced acute benzodiazepine withdrawal or gabapentin withdrawal. Thus, assessment of these risk factors requires the clinical judgment of physicians to determine the best treatment course based on all available information. Based on all available information, Dr. Fatoki operated under the standard of care of not continuing two medications that could have caused Ms. Freiwald harm. There is no evidence of withdrawal during her incarceration and when she goes outside the jail for her HUBER privileges to attend classes, she demonstrates a level of functioning that is not consistent with acute benzodiazepine or gabapentin withdrawal. She stepped in front of a truck on November 2, 2016 and succumbed to her injuries, but based on her prior mental health history, she attempted the same thing a few months earlier with her car and was unsuccessful. The fact she was on the very same medications during her previous suicide attempt clearly shows the medications likely had no effect on her impulsive decision to step in front of a truck on November 2, 2016. She was also outside the jail during the suicide attempt so both the Sheriff's department and nursing staff could not be responsible for her clinical care or safety.

My opinion in this case are given with a reasonable degree of medical probability and is based on my experience in the correctional health field and clinical arenas, and upon the documentation provided to me for review. My opinions have never been disqualified in court. I reserve the right to change this opinion in the event additional documentation is provided in this matter.

Executed on November 21, 2019 in San Diego, California

_____ MD
Alfred Joshua, MD, MBA, CCHP-P, FAAEM