**Supplement to**
**Expert Opinion Report**

**In The Matter Of:**
**Estate of Ruth Freiwald v Brown County and**
**Correct Care Solutions et al.**

CASE NO: 18-CV-896

**Prepared by Suzanne L. Ward, RN, MS, LNC**

*for*

**Attorney**
**Jennifer Budzien**
**Lawton & Cates, S.C.**

I am submitting a supplement to my original report regarding the care provided to Ruth Freiwald at the Brown County Jail from October 27, 2016, through November 2, 2016. This supplemental report is based upon new information provided to me: Depositions of Nurses Emily Blozinski, LPN, Jessica Jones, RN, Jessica Denissen, RN, and Dr. Fatoki.

I hold the opinions presented in this report to a reasonable degree of nursing certainty. My opinions are based upon my education, clinical experience and review of the case records and materials provided to me. In the event additional relevant information becomes available after the issuance of my supplemental report, I reserve the right to further amend my report and incorporate such information as necessary. I also reserve the right to incorporate additional information in response to any expert report or opinions proffered on behalf of the Defendants.



EXHIBIT
**46**

Ward
EXHIBIT 196
1-17-20

## I.   **Emily Blozinski, Licensed Practical Nurse (LPN)**

**Emily Blozinski breached professional standards of nursing care and her duty to act as any medically trained nurse would have acted in a similar circumstance to that of providing or ensuring care to Ruth Freiwald. Her breaches of the standards of care were so egregious that her actions, failures to act, and refusals to act cannot have been the result of the exercise of professional nursing judgment. Her breaches were reflective of a widespread practice and custom of knowing indifference toward the serious medical needs of patients, generally, and a knowing indifference toward the serious medical needs of Ruth Freiwald, specifically.**

It is reasonable to believe that Nurse Blozinski knew of Ruth Freiwald's serious medical needs. She did not respond as any reasonable medically trained licensed practical nurse would have responded to address Ms. Freiwald's health needs and it is not reasonable to believe she used professional nursing judgment in responding to Ms. Freiwald's pleas to the medical staff at Brown County Jail for treatment of her diagnosed medical conditions as they worsened over several days. Nurse Blozinski knowingly failed and refused to address Ruth Freiwald's serious medical needs, disregarded her pleas for medical help and denied her access to essential medical care.

2

Each day the booking sheets of newly admitted inmates were
printed by Nurse Blozinski (Blozinski Deposition, pp 121-122) or by
Nurse Jessica Denissen (Denissen Deposition, pp 38, 50) and reviewed
for current medications and allergies. Ruth Freiwald's booking sheet
would likely have been printed on Octobert 27, 2016 or October 28,
2016, and nursing staff knew she was on several medications and knew
what those medications were. Nurse Blozinski would have known that
Ruth Freiwald was on medication that, if stopped suddenly, could result
in withdrawal. Nurse Blozinski had a role in assessing patients for
withdrawal from medications – opiates and benzodiazepines (Blozinski
Deposition, p 73). Nurse Denissen testified that there could be
consequences to the sudden cessation of certain drugs and suddenly
stopping psychotropic or BP meds could be problematic (Denisssen
Deposition, pp 17-18). She further testified that the nurse's role in
medication cessation was monitoring (Denissen Deposition, p 17).

At Ruth Freiwald's request her son brought her court-ordered
medication to the jail on Friday morning, October 28, 2016, where it was
seized by the Brown County Sheriff's Department. Nurse Blozinski knew
the medication was brought in to the jail (Blozinski Deposition, p 183).

Ruth Freiwald submitted two Inmate Requests for medication and
medical care to health services staff at the Brown County Jail
complaining of severe migraine headache, elevated blood pressure,
increased anxiety, difficulty thinking straight and pleading for

3

assistance. The first request on October 28, 2016, informed staff that her anxiety would get worse if her medications were withheld. She reported a migraine headache due to elevated blood pressure and requested blood pressure monitoring. On October 30, 2016, she informed staff she still had not received her medications, described symptoms of withdrawal including elevated blood pressure and difficulty thinking straight. She explained that the judge ordered her to continue to take her prescribed meds. Nurse Blozinski received and responded in writing to both health requests but took no timely action or action whatsoever to speak to Ruth Freiwald about her reported concerns, conduct an assessment, arrange for monitoring or provide care of any kind to Ruth. She knew of Ms. Freiwald's reported health concerns and the court order. She would have known that Ruth Freiwald was describing potential symptoms of medication withdrawal. Nurse Blozinski testified she did not receive the judge's orders or did not have them and that it was not conveyed to her by correctional staff that Ms. Freiwald was court-ordered to continue taking all her prescribed medication when she entered Brown County Jail (Blozinski Deposition, p 145). In the circumstance of ensuring that Ruth Freiwald received appropriate medical care, Nurse Blozinski did not need the correctional staff to tell her about the judge's order for Ms. Freiwald to continue her meds – Ms. Freiwald herself provided that information in her medical request, with a

4

plea for medical staff to follow up. Nurse Blozinski ignored the information and took no action.

Nurse Blozinski took no steps to obtain the court order or information from the court order after she received Ruth Freiwald's medical request indicating there was such an order (Blozinski, p 191). She did not ask anybody else at the correctional facility to locate the judge's order to confirm whether Ms. Freiwald had been ordered to continue to take her medication. She did not raise the issue to her supervisor, Nurse Jessica Jones, or to the jail physician, Dr. Fatoki (Blozinski, p. 191).

Despite knowing that Ruth Freiwald was not receiving prescribed medication, knowing that drug withdrawal would be a concern as a result, knowing that Ruth, herself, was reporting and describing symptoms of drug withdrawal, and knowing that Ruth could not access her medication unless Dr. Fatoki ordered it Nurse Blozinski did not arrange for her to be monitored, did not take any action to see her, did not seek direction from the nurse under whom she practiced and did not take any action whatsoever to facilitate obtaining orders to continue Ruth Freiwald's prescription medications.

Ruth Freiwald's medical concerns were not followed up or addressed. Her community physician was not contacted to verify any of her medications (Blozinski, p 167) or to get information about the rationale for her medication regimen. Nurse Blozinski did not talk to her

5

supervisor, Nurse Jones, and did not talk to Dr. Fatoki or any other physician, about Ruth Freiwald's medication, Ruth's reported health concerns or either of her medical requests. Nurse Blozinski did not talk to correctional staff to ask them to monitor Ms. Freiwald, and did not ask any correctional staff to bring Ruth to the main facility for a blood pressure check or a face-to-face examination (Blozinski, pp 180-181). She did not conduct any examination of Ruth Freiwald to evaluate her for withdrawal symptoms. Nurse Blozinski took no steps in response to Ruth Freiwald's medical request reporting she had anxiety and PTSD that would get worse if her medications continued to be withheld (Blozinski, p 179). She took no steps to address Ruth Freiwald's concerns about migraine headache, elevated blood pressure or inability to think straight. Nurse Blozinski briefly responded to Ruth Freiwald's medical requests in writing but did not conduct any examination or assessment of Ruth and took no actions to follow up Ruth's complaints in order to determine appropriate interventions.

Nurse Blozinski did nothing other than write two brief notes in response to Ms. Freiwald's submitted concerns stating "Next available appointment w/HSU for BP check; Meds to be reviewed" and "Meds sent down to WRC, HSU does not have judge's order at this time". Nurse Blozinski did not check Ruth Freiwald's blood pressure or other vital signs, did not arrange for her to have her blood pressure or other vital signs checked, and she did not take any action to follow up on Ruth's

6

report that she had not received any of her medications. Nurse Blozinski took no action to follow up on Ruth's medication, clonazepam or gabapentin, to ensure her prescription medication was properly evaluated for approval or disapproval by the jail physician. Ruth did not receive any medication that was ordered for her until 10/31/16. By 10/31/16, after Ruth Freiwald's second written request, Nurse Blozinski knew Ruth had gone for multiple days without any medication (Blozinski Deposition, p 185) and knew that clonazepam and gabapentin had not been ordered by Dr. Fatoki (Blozinski Deposition, p 192). No one at the Brown County Jail checked to verify the judge's order for court-ordered medication. No one checked into the medication regimen Ruth Freiwald's community providers prescribed that warranted the judge's attention and court order for continuation. No one, including Dr. Fatoki, contacted Ruth Freiwald's community providers to confirm the need for a specific medication regimen essential for treatment of her serious medical needs to determine approval and continuity of the medications or disapproval and safe, appropriate discontinuation. Nurse Blozinski never asked Nurse Jones or Dr. Fatoki why Ruth's medictions were not approved (Blozinski Deposition, p 198) and never asked any correctional staff to momitor her for signs or symptoms of withdrawal (Blozinski Deposition, p 198).

Nurse Blozinski testified that Ruth Freiwald was a Huber inmate at the Brown County Jail and based on that status she was expected to

7

seek medical attention outside of the jail or set up an appointment with an outside provider on her own if needed (Blozinski Deposition, p 28). The jail procedure for obtaining medical attention was not relevant for Ruth's medical needs. She did not need to seek medical attention from her outside provider and she was not requesting an appointment for medical attention from the Brown County Jail medical staff. She was requesting that the treatment already ordered by her community physician be provided while she was detained in the jail. Nurse Blozinski knew that Ruth already had treatment ordered, knew the treatment was not being provided and knew that Ruth was experiencing adverse clinical symptoms as a result of not receiving her medication treatment yet she took no action whatsoever to ensure that Ruth could access the care she needed and requested for her serious medical needs. Nurse Blozinski's knowing failure and refusal to ensure that Ruth Freiwald's treatment, already ordered by her community physician, was at least evaluated and considered by the Brown County Jail physician was not the exercise of professional nursing judgment.

Nursing staff from the main jail infrequently visited the Huber facility. Nurse Blozinski testified she could have checked Ms. Freiwald even though she was Huber, but chose not to take any action whatsoever. She chose not to ask correctional staff to bring Ruth to the main facility for a nurse to do a BP check or a face-to-face examination (Blozinski, pp 180-181). She took no action to assess Ruth's vital signs

8

or health status. Nurse Blozinski claimed she used her professional nursing judgment in responding to Ruth Freiwald's requests (Blozinski, p 220). Nurse Blozinski's knowing failure and refusal to assess, evaluate or monitor Ruth Freiwald, a patient who was expressing clinical concerns of high blood pressure, headache, difficulty concentrating, and who was expressing concerns about not receiving court-ordered medication on two occasions in written requests was not the exercise of professional nursing judgment.

Any medically trained nurse would know the importance of ensuring that an inmate had their prescribed medication and would take sufficient measures to avoid delaying administration of medication where significant withdrawal symptoms could occur as a result of it being withheld. Any medically trained nurse would know the importance of conducting a face-to-face assessment and taking an inmate's vital signs when they reported symptoms of very high blood pressure and exacerbation of anxiety and PTSD symptoms. Conducting an assessment and taking vital signs of a patient reporting clinical symptoms is the most basic care any nurse provides. Checking the blood pressure of a patient who has been prescribed antihypertensive medication such as lisinopril who was not receiving the medication is a monitoring activity that any nurse would know should be done. Evaluating the mental health status of a patient diagnosed with depression, anxiety, and PTSD whose prescribed medications were

9

abruptly stopped is an evaluation any nurse would recognize as necessary. Performing an assessment of a patient reporting clinical symptoms is the responsibility of the nurse and is not a task that can be delegated to non-health care staff such as correctional officers.

A licensed practical nurse practices under the direction and supervision of a registered nurse or physician (Wisconsin Nurse Practice Act). The use of professional nursing judgment requires an LPN to identify a patient's medical needs and discuss any medical symptoms with a supervising clinician. Any reasonable LPN acting in a similar circumstance to that of providing care to an inmate such as Ruth Freiwald would have seen her for a face-to-face examination, identified her symptoms and concerns, taken vital signs, called an outside provider to verify prescribed medication, checked for further information about a report that a judge ordered continuation of prescribed medications and would have informed the RN of her findings. Any reasonable LPN would have consulted a supervisor for clinical direction to ensure appropriate care was provided. Nurse Emily Blozinski failed and refused to take any actions to address Ms. Freiwald's known medical needs and failed to consult with supervisory staff to direct her practice.

Any nurse responsible for providing care or determining the care Ruth Freiwald needed would have known that she did NOT need to see an outside provider – she had already taken the responsibility to obtain medical and mental health care for her serious health needs and had a

10

treatment plan in place. Any licensed practical nurse or registered nurse would have known the importance of ensuring that Ruth's community care was at least evaluated for continuation in order to assure her health, well-being, safety and treatment of her serious medical needs.

Ruth had been involved in intensive counseling at Prevea Behavioral Health following a suicide attempt on 2/8/2016. She was regularly working with her counselor, Dawn. She was taking prescribed psychotropic medications to treat her depression, anxiety, and PTSD. According to her community physician, the medications significantly contributed to her mental stability. Ruth was not drinking alcohol with her medications.

Ruth Freiwald already had a regimen of prescribed medications that was effective to treat her serious medical needs. Ruth further took the responsibility to ensure her medications were delivered to the jail. Ruth needed the medical staff at Brown County Jail to follow through with her already prescribed treatment and authorize it. Had Nurse Blozinski taken the time to understand Ruth's needs she would have been able to communicate vital information to Nurse Jones or Dr. Fatoki to ensure that essential, responsive, appropriate care was provided.

Ruth was in a situation at the hands of Brown County Health Care Staff where her access to needed medical care for her serious medical needs was blocked, ignored, dismissed and denied. The prescribed medication she needed was seized by jail staff. The nurses responsible to

11

respond to her requests for the medication ignored her and dismissed her concerns. As a result, the nurses including Nurse Blozinski, did not have essential information to inform Dr. Fatoki's decision when he chose to disapprove Ruth's medication. Not one nurse at the Brown County Jail saw her, talked with her, assessed her, contacted her medical providers for information about her medication regimen before medications were disapproved or provided any meaningful response to address her serious medical needs, need for medication or her pleas for medical help.

Ruth Freiwald's medications were disapproved in the absence of any clinical information from her community medical providers. Dr. Fatoki testified he did not have her medical records to review (Fatoki Deposition, p 30) and he did not speak with any of her providers (Fatoki Deposition, p 29). The nursing staff did not speak with her community providers either and therefore failed to obtain essential clinical information that was integral to Ruth Freiwald's physical and mental stability. Dr. Fatoki testified that the nurses have to assess the patient (Fatoki Deposition, pp 77-78) and provide him with the vital information they thought he needed to make a determination about the inmate's care (Fatoki Deposition, p 107). Given an arrangement where the jail physician relies so completely upon nursing staff for vital information about a patient's care it was of paramount importance for the nurses to obtain details about the care as they had complete control over what information was shared or not shared with the doctor. The jail nursing

staff including Nurse Blozinski knew that Dr. Fatoki relied on the information they provided. Yet Brown County Jail staff did not bother to contact Ruth's providers for information that was so key and essential to her ongoing treatment and the stability of her serious medical conditions. Essentially they controlled Ruth Freiwald's access to medical care, denied that access, disregarded her serious medical needs and knowingly failed to evaluate the results of their careless decisions.

Dr. Fatoki testified that he did not think a referral for psychiatric services was needed for Ruth as she was stable (Fatoki Deposition, pp 122-123). In fact, Ruth was stable at the time of her arrival at the Brown County Jail. She was on medication that contributed to her mental stability, she was compliant with all of her treatment, and she was engaged in intensive, regular counselling. Each component of her treatment program contributed to her stability. Dr. Fatoki testified that discontinuation of medication is important and can result in withdrawal and worsening of a patient's condition (Fatoki Deposition, p 126). Dr. Fatoki identified that clonazepam withdrawal peaks at days 3 to 5 and identified withdrawal symptoms included change in mood, dysphoria, tremors, hallucinations, psychosis, seizures, increased blood pressure pulse and temperature and death if not treated (Fatoki Deposition, p 188). When Ruth's medications were disapproved and abruptly discontinued, she experienced the precise withdrawal pattern Dr. Fatoki identified. A key component of her treatment plan ensuring her mental

13

stability was eliminated. Any nurse would know that suddenly withdrawing prescribed medical and mental health treatment would result in the patient's decompensation, resurgence of their symptoms, and worsening of their condition and would know the importance of facilitating and ensuring the patient was able to comply with prescribed treatment.

Nurse Emily Blozinski knowingly failed to identify Ruth Freiwald's health needs, failed to evaluate her health status, and failed to assist in assuring provision of essential treatment that was already prescribed - treatment that was effective in addressing Ms. Freiwald's serious medical needs. Emily Blozinski was a "front line provider" and "gatekeeper" responsible for triage of medical requests. She was a person who significantly controlled inmate access to care for their serious medical needs. Her decisions about whether or not inmates such as Ruth Freiwald were monitored, evaluated, or received care was absolute. She determined what information and what circumstances were reported to the RN or the physician. As an LPN, Nurse Blozinski made medical decisions to deny care to inmates that exceeded her expertise and scope of practice. The Brown County Jail medical staff, including Nurse Blozinski, had Ruth Freiwald's medical information available to them; they knowingly did not follow up and failed to provide care in a timely manner. Nurse Blozinski knowingly and egregiously disregarded Ruth Freiwald's serious medical needs, refused and failed to seek, provide or

14

obtain appropriate medical interventions. She did not use reasonable professional judgment in the care she provided to Ms. Freiwald.

## II.  Jessica Jones, Registered Nurse (RN), Director of Nursing (DON)

**Jessica Jones breached professional standards of nursing care and her duty to act as any medically trained nurse would have acted in a similar circumstance to that of providing or ensuring care to Ruth Freiwald. Her breaches of the standards of care were so egregious that her actions, failures to act, and refusals to act cannot have been the result of the exercise of professional nursing judgment. Her breaches were reflective of a widespread practice and custom of knowing indifference toward the serious medical needs of patients, generally, and a knowing indifference toward the serious medical needs of Ruth Freiwald, specifically.**

Jessica Jones, Registered Nurse, was the Director of Nursing (DON) at the Brown County Jail.  She directly supervised Emily Blozinski, LPN, and Jessica Denissen, RN, and was responsible for the oversight of the health and safety of inmates and the medical care provided to them at the Brown County Jail and the Huber Work Release Center (WRC).

Nurse Jones was responsible to ensure nursing care was provided to the inmates in the Huber facility.  Generally, Huber inmates scheduled

15

their own outside medical appointments (Jones Deposition p 31) and Jones testified if a Huber inmate made a request for medical care to HSU, HSU would respond that they do not handle the care and the inmate needs to go to see their outside provider because they are a Huber inmate (Jones Deposition, p 36). Brown County Jail nurses did conduct sick call for "lockup inmates" who were not Huber inmates but were housed at the Huber WRC (Jones Depositon, p 31). In addition, Jones testified if a Huber inmate had a "small request" such as a BP check the nurses "might" take care of that for them (Jones Deposition, p 31). Nurse Jones testified nursing staff would go to the Huber facility periodically. The Huber Center was 20 minutes from the main jail facility and it would take 15-20 minutes to get there; it was part of the Brown County Jail (Jones Deposition, p 30) and the nursing staff was responsible to provide health care services as needed to Huber detainees. Jones stated she did not know if staff informed Huber inmates they were responsible for their own medical care (Jones Deposition, p 34). Nurse Jones stated Ruth Freiwald would have been referred to her provider for follow up care because she was Huber (Jones Deposition, p 212) and would have been told on a sick call slip to follow up with her provider (Jones Deposition, p 213). No documentation in Ruth Freiwald's medical record suggests that Ruth was told to contact her own provider(s) to obtain medical help (Jones Deposition, p 291) or follow up care. No information was provided to Ms. Freiwald on either of her requests for

16

health care that she was to seek her own health care with her own physician or provider. Knowing that she was responsible to obtain her own medical treatment would not have been helpful for Ruth Freiwald, however. Once an inmate saw a community provider for health care, they were still required to obtain approval from the Brown County HSU providers to actually receive the treatment. The failure to inform Ruth Freiwald about what she needed to do to obtain health care further illustrates the health care staff's dismissive disregard of her health care needs and their indifference toward her health concerns.

As previously mentioned, any nurse responsible for providing care or determining the care Ruth Freiwald needed would have known that she did NOT need to see an outside provider – she had already taken the responsibility to obtain medical and mental health care for her serious health needs and had a treatment plan in place. She was stable on her current medication regimen. Ruth Freiwald did not need to have medication prescribed for her serious health needs – she already had prescribed medications and had taken the responsibility to ensure her medications were delivered to the jail. Ruth needed medical staff at the Brown County Jail to follow through and provide her already prescribed treatment. The process for Ruth to be able to receive needed treatment for her serious medical needs depended on nursing staff obtaining complete information about her treatment and providing the information

17

to Dr. Fatoki who would then issue orders for the treatment to continue or not.

Nurse Jessica Jones was the gatekeeper of information about Ruth's medical history when she contacted Dr. Fatoki about what care he would approve or disapprove. Nurse Jones was the single provider of the vital information Dr. Fatoki testified he needed to make determinations about an inmate's care. Nurse Jones failed and refused to acquire essential information about Ruth Freiwald's serious medical needs and as a result was not able to sufficiently inform Dr. Fatoki about those needs. Nurse Jones did not see, talk to, or assess Ruth Freiwald. Dr. Fatoki testified the nurses would have to assess the patient (Fatoki Deposition, pp 77-78) to provide the vital information they thought he would need (Fatoki Deposition, p 107). Nurse Jones did not even review Ruth's available medical record. Had Nurse Jones taken the time to identify and understand Ruth's needs she would have been able to ensure that her staff provided responsive, appropriate care and would have had vital information essential to inform Dr. Fatoki's decisions relative to Ruth's medication treatment.

Nurse Jones knew that Huber inmates had to go through HSU at Brown County Jail to obtain any medication (Jones Deposition, p 51) and only the medical provider at Brown County Jail (Dr. Fatoki) had the ability to discontinue, disapprove or approve of the continuation of previously prescribed medication that inmates came into the jail with

18

(Jones Deposition, pp 51-52). If Ruth Freiwald had seen an outside provider for reinstatement of her medications in order to comply with the judge's court order and to voluntarily continue the medication effective in the treatment of her serious medical health conditions, the medication, "would still have had to be verified and called by [Nurse Jones] to the doctor [Dr. Fatoki] for approval. But they certainly could order it" (Jones Deposition, p 216). There simply was no assurance the community providers' treatment program for a patient with serious medical needs would be continued. If the jail physician was not even aware of the community treatment program it was all but certain the patient's treatment program would not continue. Ruth Freiwald's treatment program, developed over several months by her community providers to keep her stable and safe, was not even considered for continuation by the jail health staff.

There was no assurance that previously prescribed medication would be approved and Dr. Fatoki was the jail medical provider who made the determination. The information he relied on to make the determination included vital information obtained by the nursing staff.

Nurse Jones was in the gatekeeping position of providing medical and medication information to Dr. Fatoki upon which he relied. Jones had the pivotal decision-making role of what information was or was not provided to the doctor and whether the information that was provided was accurate and complete. There is no information to suggest that

19

Nurse Jones took any actions to determine the clinical indications for Ruth Freiwald's medication regimen and therefore did not provide complete vital medication details or treatment rationales to Dr. Fatoki which he needed when she contacted him for approval or disapproval of Ruth's medication. As a result, Dr. Fatoki, in the absence of complete clinical information, disapproved the gabapentin and clonazepam medications prescribed for treatment of Ruth's serious medical conditions, an essential component in her plan of care that kept her stable. Dr. Fatoki did not request information that would have informed his initial decisions. Rather, he requested that Ruth's medical records be obtained, a process that would likely have taken a couple weeks to complete. He did not request that Ruth's community providers be contacted by phone to obtain more timely information.

Ruth Freiwald had prescribed medication ordered by her community physician that was made available to the jail, but she could not access it because it was seized by jail staff after her son brought it to the jail. Dr. Fatoki then disapproved her psychotropic medications of gabapentin and clonazepam in a circumstance whereby insufficient information was provided to him by Jessica Jones RN. Nurse Jones provided no clinical information about why Ruth was maintained on a combination of the two medications. Nurse Jones did not see Ruth, talk with her, assess her, contact her medical providers for information about her medication regimen or take any meaningful action to address or

20

understand her serious medical needs and need for medication. Nurse Jones failed and refused to obtain information about Ruth's serious health needs and as a direct result Ruth's needs were not met.

Ruth's medications were disapproved in the absence of any clinical information from her community medical providers. Dr. Fatoki did not request medication information to inform his decision to disapprove Ruth's medications. Dr. Fatoki testified he did not have her medical records to review (Fatoki Deposition, p 30) and he did not speak with any of her providers (Fatoki Deposition, p 29). He relied on a nurse assessment and information she (Nurse Jones) provided him. Dr. Fatoki did not have complete information about Ruth's serious medical needs. Nurse Jones was responsible for the failure to obtain essential information integral to the treatment of Ruth Freiwald's serious medical needs – the information about treatment that significantly contributed to her mental stability.

Ruth was forced to experience medication withdrawal as a result of staff failures to assess her, monitor her, identify clinical indications for medication, provide medication, obtain medication treatment rationale or respond in any way to her serious medical needs despite her specific requests and pleas. Nurse Jones refused and failed to ensure that vital information about Ruth's medication regimen and health condition was reported to Dr. Fatoki and, as a result, Ms. Freiwald was unable to access needed care and medication for her serious health needs.

21

There is no evidence that Nurse Jones took any steps whatsoever to determine Ruth Freiwald's prescribed medication needs or ensure that she received appropriate care and monitoring when prescribed medication was not continued in a timely manner or continued at all. There is no evidence that Nurse Jones identified any urgency or priority to ensure that Ms. Freiwald received prescribed medications for her serious medical needs or that she was at all concerned when medications, that could result in withdrawal if not given as prescribed, were not ordered or available in a timely manner or at all. She took no actions to monitor Ruth Freiwald for withdrawal from her medications or ensure that another nurse would provide the monitoring.

When Ruth Freiwald's medications were disapproved she was caught in a disturbingly circular denial of care (medications and monitoring), an inability to access care (medications and monitoring) and worsening health due to denial of care (medication and monitoring). Dr. Fatoki testified he had proper things in place to make sure Ruth was monitored (Fatoki Deposition, pp 189, 192) and there was no report she was having withdrawal (Fatoki Deposition, p 191). He stated the jailers assessed her and were monitoring her two to three times per day (Fatoki Deposition, pp 206 -207). In fact, Ruth was not being monitored at all for withdrawal symptoms and the jailers were not qualified or trained to monitor a patient for the presence of withdrawal symptoms. Dr. Fatoki testified the frequency of monitoring depended on the presence of

22

symptoms (Fatoki Deposition, p 207) however, Ruth was not being monitored for the presence of withdrawal symptoms. Ruth was caught in another disturbingly circular denial of care (no monitoring for symptoms), an inability to access care (no symptoms meant monitoring was not done) and worsening health due to denial of care (no monitoring meant worsening symptoms were not identified or treated). The bottom line was Ruth received no monitoring at all. The nursing staff ignored the order for vital signs, implemented no monitoring actions whatsoever and Ruth's symptoms exponentially worsened toward a catastrophic end.

Nurse Jones as director of the health services staff would know that nursing staff did not go to the Work Release Center to monitor inmate's vital signs or monitor their health status. She would know that the nurse's role in the cessation of medication was to provide assessment and monitoring and would also know that withdrawal monitoring was not a function that could be delegated to non-medical jail staff.

Nurse Jones had training in her nursing program on how to care for patients who were deemed a suicide risk and received training that was focused on depression, anxiety, and PTSD (Jones Deposition, p 57). As part of Correctional Care Solutions (CCS) employment, she was required to complete suicide prevention training yearly through the Wellpath Academy online training (Jones Deposition, p 58). She stated it was important for HSU staff to know which inmates were deemed suicide risks (Jones Deposition, pp 74-75) so they could be kept safe or to

23

identify if there was somebody they needed to take extra precautions with (Jones Deposition, p 75). However, Nurse Jones received no suicide prevention training through CCS or through the Brown County Jail in 2016 and there is no information to suggest she sought suicide prevention training on her own. The first notation on her training record of any suicide training was August of 2017 (Jones Deposition, pp 146-147). Nurse Jones, in her supervisory position as DON at the Brown County Jail would know the importance of current staff training about patients who presented a suicide risk or were suicidal. She took no action to ensure that a reasonable suicide prevention program included training of nursing staff, including herself, of the Brown County Jail medical department. Jessica Denissen's testimony that as a nurse she only dealt with medical and not mental health reflects the position of the nursing department that mental health issues were disregarded by nursing staff. None of the nurses, Nurse Jones, Nurse Denissen, or Nurse Blozinski had any information about how to access the Suicide Screening Questionnaire or knowledge about an inmate's suicide risk. None of the nurses had ever accessed the information. Nurse Jones did not treat Ruth Freiwald's suicide risk as important even though she testified it was important information to know. Nurse Jones took no actions whatsoever to ensure that Ruth's suicide risk was known or that any measures were put in place to ensure her safety.

24

Nurse Jones stated she would have reviewed the answers Ruth Freiwald gave on the jail intake form relating to suicide when she did the medication verification (Jones Deposition, p 159). However, she did not review Ruth Freiwald's Suicide Screening Questionnaire. Nurse Jones was not aware Ruth Freiwald was deemed a suicide risk by jail officers (Jones Deposition, pp 159-160). Nurse Jones failed to obtain essential information about Ruth Freiwald's medical history and, as a result, could not transmit information to health care staff who had a need to know.

There is no information to suggest that Nurse Jones, as the jail nursing director took any action to ensure nursing staff were properly trained in suicide prevention or that lines of communication were in place to ensure health care staff had essential clinical information that included the serious health issue of suicide risk or other serious mental health issues. There is no information to suggest that Jones took any action to facilitate communication between the nursing staff and mental health staff. Nurse Denissen testified she did not know suicide screenings were done and had never reviewed a Suicide Screening Questionnaire (Denissen Deposition, p 40). She further testified she only dealt with medical and not mental health and that mental health was separate (Denissen Deposition, p53). Nurse Blozinski testified she did not know how to access a Suicide Screening Form and had never seen one (Blozinski Deposition, pp 47-48). Nurse Jones failed and refused to ensure that the health care staff under her supervision possessed basic

information about an inmate's mental health or serious mental health issues and understood their role in ensuring inmate safety. Nurse Jones failed and refused to facilitate the transmission of key clinical information to staff responsible for maintaining and monitoring the medical health, mental health and safety of inmates and ensuring their serious medical needs were addressed.

Nurse Jones was trained on side effects of medications, was trained on adverse effects of discontinuing medication (Jones Deposition, pp 43-44) and was trained on the administration and cessation effects of benzodiazepines (Jones Deposition, p 45). She knew the potential outcome of withdrawing unsafely from clonazepam (Jones Deposition, pp 46-47) and knew the symptoms of withdrawal (Jones Deposition, p 47). She stated a standard protocol was used in the treatment of patients withdrawing from clonazepam (Jones Deposition, p 49) however she took no action whatsoever to ensure that the protocol was in place for Ruth Freiwald. Nurse Jones was aware that withdrawal symptoms with clonazepam could begin within 24 hours of missing a dose (Jones Deposition, pp 182-183). Ruth Freiwald received no clonazepam medication at the Brown Coounty Jail and did not receive any medication to mitigate withdrawal symptoms from sudden cessation of clonazepam yet none of the nursing staff took any action whatsoever to monitor her for signs or symptoms of withdrawal. Likewise, no monitoring was put in place for the abrupt cessation of gabapentin. Ruth did not receive her

26

blood pressure medication, lisinopril until 10/31/16. Nursing staff did not bother to check her blood pressure. Nurse Jones failed and refused to ensure that Ruth Freiwald was monitored for withdrawal from medication or adverse effects of not having prescribed medication. Nurse Jones knowingly ignored Ruth's serious medical needs and knowingly failed to ensure in any way that her health and safety was maintained.

Nurse Jones testified she was not familiar with any withdrawal symptoms of fluoxetine, gabapentin, lisinopril or diclofenac (Jones Deposition, pp 224-225) and did not have enough knowledge in pharmacy to know which medications could exacerbate a withdrawal process from clonazepam (Jones Deposition, p 224). She testified she had access to a Drug Reference book to find additional information about medications but did not consult the book or any other reference or reference person to obtain information about the withdrawal symptoms Ruth Freiwald may have experienced as a result of not having her prescribed medication or as a result of the sudden cessation of all of her medication. Nurse Jones failed to take any steps to follow up with Ruth Freiwald when Dr. Fatoki did not approve the clonazepam or gabapentin medication. Jones did not conduct any assessment or ask anyone else to conduct an assessment for withdrawal. Nurse Jones refused and failed to appropriately monitor Ruth Freiwald for any withdrawal from all of her prescribed medication, medication that was ordered to maintain her medical and mental health.

27

Nurse Jones did not know Ruth Freiwald's prior criminal history, was not aware that Ruth Freiwald had been placed in a mental facility as a result of her first suicide attempt (Jones Deposition, p 157), was not aware she had been diagnosed with PTSD, and was not aware she was diagnosed with chronic depression (Jones Deposition, p 158). Nurse Jones stated she would have known Ms. Freiwald was diagnosed with anxiety by reviewing her booking sheet when her medications came in (Jones Deposition, p 158). Nurse Jones knew she had high blood pressure and that she was taking lisinopril but did not know why she was taking gabapentin (Jones Deposition, p 161). She knew she had anxiety as she was prescribed clonazepam (Jones Deposition, p 162). There was no evidence to suggest that Nurse Jones attempted to acquire any relevant or pertinent history to inform her about Ms. Freiwald's prescribed medication regimen despite knowing she would be contacting the jail physician to approve or disapprove the medication. The jail physician relied upon the vital information provided to him by the nurse when deciding to approve or disapprove medication. Nurse Jones failed to ensure she had the necessary information to inform the physician about Ruth Freiwald's medication needs and ensure care for her serious medical needs.

Nurse Jones testified it was not custom or standard to go through the entire chart prior to calling the doctor. She did not review whether Ruth Freiwald had submitted any requests. She had access to the

28

information but she did not think it was necessarily something she needed to know (Jones Deposition, pp 175-176). Nurse Jones took no action to obtain complete information about the status of Ruth Freiwald's health conditions. Her complacency regarding obtaining complete information upon which to base medical treatment for an inmate with serious medical needs is egregious and unacceptable in professional nursing practice and violates the nursing standard of care for assessment to collect comprehensive data pertinent to the consumer's health and/or the situation (ANA Scope and Standards of Nursing Practice). It is not reasonable to believe appropriate care could or would be rendered based on incomplete knowledge of essential patient clinical information.

Dr. Fatoki testified the nurses have to assess the patient and provide the vital information he would need to make his determinations about a patient's care (Fatoki Deposition, pp 77-78, 107). Nurse Jones knew the significant responsibility she had to provide the doctor with essential patient care information and her responsibility to obtain and share that information at the time medical orders were written. Nurse Jones' knowing disregard for Ruth Freiwald's serious medical needs and her complacency in ensuring appropriate care for Ruth was egregious and incongruous to the care any medically trained nurse would have rendered in a similar circumstance.

29

Nurse Jones did not have any face-to-face contact with Ruth Freiwald; no medical staff member had any face-to face-contact (p 148) with her. She was not aware of a court order for Ruth Freiwald to continue taking her medication. No medical staff and no HSU staff reviewed the court minute sheet relating to her sentence at any time before November 2, 2016 (Jones Deposition, pp 148-149). Nurse Jones stated the jail MD would not necessarily provide what's court ordered (Jones Deposition, p 149). There is no evidence to suggest Nurse Jones attempted to obtain complete information, including court orders for medication, to provide to the jail physician when she contacted him. Nurse Jones' knowing failure to obtain complete clinical information resulted in provision of an incomplete and inaccurate clinical picture to Dr. Fatoki and, consequently, Ruth's serious medical needs went untreated.

Nurse Jones would have been the nurse on duty when Ruth Freiwald's son brought her meds to the jail facility. Jones stated she would have retrieved them from the intake area and called the doctor for approval or non-approval (Jones Deposition, p 167). Nurse Jones testified that if medication was in its original container, not tampered with, and wasn't mixed pills, it would be appropriate to administer the prescription that came in with the patient (Jones Deposition, pp188-189). Ruth's prescription medication brought to the jail by her family member was not continued. Ruth Freiwald's medications would have

30

been available for her to take if they had been ordered and processed. The prescription information on the clonazepam and gabapentin medication bottles would have provided Nurse Jones (or Nurse Blozinski) with sufficient information to contact the prescriber for information about treatment rationale. None of the nurses took any action whatsoever to speak to Ruth Freiwald's community prescriber for information about the medication plan for her serious medical and mental health conditions. None of the nurses arranged for the medication brought in to the jail for Ruth was continued.

The medical record reflects it took more than a full day before Jones consulted with Dr. Fatoki about Ruth Freiwald's medications and said the timing of the call depended on what was going on in HSU (Jones Deposition, pp 179-180). Nurse Jones did not know when Ruth Freiwald had taken her last dose of medication and stated she would not normally ask a patient when the last dose of their medication was taken (Jones Deposition, p 182). No one asked Ruth Freiwald when the last dose of her medications had been taken (Jones Deposition, p 296). There is no evidence to suggest that Nurse Jones was at all concerned about when Ruth Freiwald had last taken her medication despite knowing it could result in withdrawal in just 24 hours. It is not reasonable to believe that Nurse Jones was unaware of the importance of knowing when Ms. Freiwald had last taken her medication yet she was unconcerned about

31

the likelihood that Ms. Freiwald would begin to experience withdrawal symptoms in 24-48 hours.

Nurse Jones' conversation with Doctor Fatoki about Ruth Freiwald's medication took place on 10/29/16. Dr. Fatoki did not order the clonazepam or gabapentin Ms. Freiwald had been taking. Nurse Jones did not memorialize the reason for disapproval of the gabapentin or clonazepam (Jones Deposition, p 214) in Ms. Freiwald's medical record. CCS policy required the reasons for a medication denial to be reflected somewhere in the records. Despite her position as Director of Nursing, Nurse Jones stated she was unaware of specifics of the policy (Jones Deposition, p 215). As a result, there is no information to reflect a reason that Ms. Freiwald's prescribed medication was not approved. There was also nothing to suggest that any follow up of the disapproved medications took place. It is reasonable to believe that Nurse Jones would have known or should have known the policy requirements for medication denials and would have known and understood the importance of documenting a disapproval of prescribed medication. There is no information to suggest that Ruth was informed of the decisions health care staff took about not continuing her medication.

Nurse Jones took no actions to monitor Ruth Freiwald related to cessation of any of her medications including clonazepam and gabapentin despite knowing Dr. Fatoki had not approved it. She did not instruct anyone else to do anything for Ruth Freiwald about any

withdrawal from gabapentin or clonazepam (Jones Deposition, pp 206-207) or adverse reactions to the abrupt cessation of her prescribed medication.

Nurse Jones took no actions to monitor Ruth Freiwald related to cessation of clonazepam despite knowing Dr. Fatoki had not approved it. A Clinical Institute Withdrawal Assessment (CIWA) [used for alcohol and benzodiazepine withdrawal] was never ordered or administered (Jones Deposition, p 212). An inmate placed on CIWA withdrawal protocol was monitored once per shift, unless they were sicker and needed to be assessed more often. Standard protocol was once per shift (Jones Deposition, p 131) for seven days. Ruth Freiwald was not monitored at all. Nurse Jones did not instruct anyone else to do anything to monitor Ruth Freiwald for withdrawal from clonazepam or adverse reactions to the abrupt cessation of her prescribed medication.

Following Nurse Jones' conversation about Ruth Freiwald's medication with Dr. Fatoki she had no further involvement with her care. She took no further actions after taking the medication orders (Jones Deposition, p 211). Nurse Jones made no appointment with Ruth Freiwald to physically observe her at any time after 10/29/16 and she did not instruct anyone else to observe her (Jones Deposition, p 213).

Emily Blozinski processed the medication orders for Ruth Freiwald a day later on 10/30/16 (Jones Deposition,p 193); medications ordered on 10/29 by Dr. Fatoki were not entered into the system by Nurse

33

Blozinski until 10/30/16 at 9:59 PM. The start date of the medication was 10/31/16. The first time Ruth Freiwald received any medication was 10/31, two days after the telephone call with Dr. Fatoki and four days after she was booked into the jail. Ruth Freiwald did not have any meds in the intervening time (Jones Deposition, p 210).

Dr. Fatoki was listed as the person who ordered that Ruth Freiwald be monitored for drug withdrawal however monitoring of vital signs at noon for three days was entered in Ruth Freiwald's record at the time she was booked into the jail by Nurse Denissen and the order was simply entered under the doctor's name. Nurse Jones stated she did not know why Jessica Denissen put the order in for blood pressure checks; she took no action to learn this information and there is no evidence she considered that the monitoring was necessary or why. Nurse Jones said it was a "nursing call" or a decision left up to the nurse whether all orders given by a doctor were recorded. The order for a three-day blood pressure check was standard protocol at the jail automatically instituted for someone that came in reporting high blood pressure without being on medications. Nurse Denissen testified that if an inmate was on blood pressure medication they would be put on three-day blood pressure checks to identify their pattern for the MD to review (Denissen Deposition, p 55). Nurse Jones explained that in order to put the order into the system it had to go under the name of a physician but a nurse can initiate it (Jones Deposition, p 219). Nurse Denissen did initiate and

34

order the three-day blood pressure check for Ruth but no blood pressure or heart rate check of Ruth was ever done (Jones Deposition, p 219) despite her reporting high blood pressure and not having her medications available. Jones testified there was no nurse at the Huber Center able to administer blood pressure checks for three days (Jones Deposition, p 220) however, arrangements could have been made for Ruth Freiwald to be sent back to the main jail for BP monitoring (Jones Deposition, p 221) or a nurse could have been sent down to the Huber Center. Nurse Jones knew that Ruth Freiwald did not, at any time, have her BP monitored (Jones Deposition, p 221). It is not reasonable to believe that "it was a nursing call whether all orders given by a doctor were recorded". Such an approach would be contradictory to professional nursing practice in any setting. The refusal and failure of Nurse Jones to follow through and ensure that Ruth Freiwald's blood pressure was monitored was an egregious and knowing disregard for her serious medical needs.

Nurse Jones stated she had no idea if anyone was watching Ruth Freiwald for withdrawal (Jones Deposition, p 186). No documentation was present in Ms. Freiwald's medical record of anyone who actually did monitor Ruth Freiwald for withdrawal from any medication (Jones Deposition, p 187). Nurse Jones was not aware of anyone at HSU who informed anybody at Brown County Jail to monitor Ruth Freiwald with respect to withdrawal symptoms prior to 10/29/16 (Jones Deposition, p

183). On 10/29/16 Nurse Jones was unaware of any monitoring of Ruth Freiwald for any withdrawal symptoms from any medications she had not received (Jones Deposition, p 187).

Nurse Jones understood that Ruth Freiwald may be suffering from withdrawal symptoms by not having her medications (Jones Deposition, p 183). She stated Ruth Freiwald should be monitored as she was being withdrawn from the clonazepam but that did not mean she needed to be held back from work or school for the monitoring (Deposition, p 185). Nurse Jones took no steps to monitor her or make arrangements for someone else to monitor her for withdrawal due to not having prescribed medication despite her statement that Ruth should have been monitored. Ruth Freiwald's clonazepam medication was abruptly stopped – she was not being withdrawn from the medication in a clinically appropriate or prudent manner. Nurse Jones did not take any actions whatsoever to monitor Ruth for withdrawal or for worsening of her health status as a result of abrupt medication cessation. Nurse Jones' refusal and failure to follow through with clinical orders to monitor Ruth for withdrawal from clonazepam demonstrated an egregious and knowing disregard for her serious medical needs.

Nurse Jones took an order from Dr. Fatoki to notify officers to let HSU know if there were any withdrawal symptoms. Nurse Jones stated she communicated by telephone to let the officers know (Jones Deposition, p 205) to contact HSU with withdrawal symptoms. Nurse

36

Jones did not know whom she communicated with. She did not know what training the individuals at the Work Release Center had (Jones Deposition, pp 208-209). She did not recall the order she gave to the officers and did not write anything down. (Jones Deposition, p 209).

Nurse Jones expected that Huber officers would monitor Ruth Freiwald for withdrawal and report any benzodiazepine withdrawal (Jones Deposition, p 279-280). The Huber facility did not have nursing staff regularly assigned therefore Nurse Jones expected the correctional officers to perform the monitoring. She provided no direction and no instructions about the nature of the monitoring to be done, how often, or what the officers should observe for. She stated correctional officers were familiar with symptoms and signs of withdrawal. She stated she did not know that for sure but it was something that was discussed on a daily basis with the officers when nurses saw patients on withdrawal assessments (Jones Deposition, p 134). Nurse Jones testified that "Nurses tell them what to look for...officers have been dealing with alcohol withdrawal for many, many years, a lot of them, so they're pretty well versed in what they're looking for. I can't say for certain it's part of their training, however". Nurse Jones stated she was not specifically aware of whether the officers had been dealing with withdrawal from the medication Ruth Freiwald was on but stated the benzodiazepine presents the same as alcohol (Deposition, p 135). Patient assessment and monitoring of a patient for signs and symptoms of drug withdrawal is a

37

nursing responsibility that cannot be delegated to an unqualified, non-medical staff person. Nurse Jones' determination that the jail officers would "just know" the withdrawal symptoms to watch for with no directives or instruction provided to guide them was an abdication of her nursing responsibility, demonstrated inappropriate nursing decision-making and was a knowing disregard for Ruth Freiwald's serious medical needs. Nurse Jones had no information about who would be doing the monitoring, what their qualifications were or what their understanding of "monitoring" was. She knew or should have known that non-medical jail officers were not qualified to perform patient assessments or monitoring for drug withdrawal. Nurse Jones' decision to delegate the monitoring of Ruth Freiwald for drug withdrawal to the Huber correctional staff was a knowing and egregious disregard for Ruth Freiwald's serious medical needs.

Nurse Jones testified if nursing thought a Huber inmate was exhibiting any type of withdrawal symptoms they would ask the officers to call and send the inmate immediately back to the main jail (Jones Deposition, p 134). There is no information to explain how Nurse Jones ensured that untrained, non-medical officers knew to monitor Ruth Freiwald for withdrawal symptoms or knew what to watch for. There is no information to explain how nursing staff thought officers could identify that a Huber inmate was exhibiting withdrawal symptoms if the inmate was not being monitored for withdrawal. Ruth Freiwald was not

38

only not being monitored for withdrawal she was not even having her vital signs checked.

Nurse Jones stated an inmate should be monitored more often than one single time. She testified "An officer should be able to just look at someone who's coming back from work or school. They have people out on Huber all the time that violate and take benzos and go into detox. So, when they come back, they recognize those signs. They call HSU, they're brought back. So, it's not a complete foreign concept to them." (Jones Depositon, p 185). Nurse Jones took no steps to provide any of the jail officers information that they should be observing Ruth Freiwald or what they should be looking for as Ruth returned from work or school. There is no information to suggest that Nurse Jones provided any direction about how frequently Ruth Freiwald should be looked at. It is not reasonable to believe that a nurse would expect an untrained officer to know an inmate was experiencing withdrawal symptoms simply by looking at them.

Nurse Jones did not follow-up with anybody from the Work Release Center to determine if Ruth Freiwald was being monitored (Jones Deposition, p 292) or looked at. As of 10/30 5 PM, Ruth reported she was suffering from symptoms suggestive of withdrawal from medication she had not yet received - Ruth reported the symptoms in her health services request. Nurse Jones stated she would not know if they were symptoms of withdrawal without investigating (Jones Deposition, p 294)

39

however she took no actions whatsoever to investigate or follow up on Ruth Freiwald's report of symptoms and took no action to direct anyone else, including Nurse Blozinski, to follow up on the health concerns Ruth reported. Nurse Jones' refusal and failure to ensure that Ruth Freiwald's reported symptoms were followed up demonstrated a knowing and egregious disregard for her serious medical needs.

Assessment, including assessment of vital signs and drug withdrawal, is the responsibility of a registered nurse and may not be delegated to an unqualified, non-health care staff person such as a correctional officer. There is no evidence that Nurse Jones conducted any assessment of Ruth Freiwald's medical needs, medication needs, potential for withdrawal, actual symptoms of withdrawal, depression or suicide risk status, or made any arrangements for any assessment or monitoring to take place by anyone else at any time. The Brown County Jail Director of Nursing, the nursing supervisor in charge of the health status and needs of inmates in the jail, was responsible to ensure the health and safety of all of the inmates in the Main Jail as well as the Huber Center. Nurse Jones took no measures whatsoever to ensure Ms. Freiwald's health or safety, and took no measures to ensure that any qualified staff person in the jail provided essential monitoring of her serious medical needs. Nurse Jones' knowing and intentional failures to provide or ensure care to Ruth Freiwald demonstrated an egregious

40

breach of nursing standards of care and disregard for Ruth's serious
medical needs.

Any medically trained nurse in circumstances similar to those
presented to Nurse Jones providing care to Ruth Freiwald at the Brown
County Jail would know the importance of patient assessment,
monitoring, and ensuring that each inmate had access to needed care for
their serious medical needs. Nurse Jones knowingly disregarded Ruth
Freiwald's serious medical needs and the treatment plan her community
physicians and providers developed to manage her complex needs.
Nurse Jones' knowing disregard was so egregious as to not have been the
result of professional nursing judgment.


### III. <u>Nursing Staff Was Not Trained Regarding Jail Policy, Jail Procedure, or Patients Identified As A Suicide Risk</u>

The nursing staff at Brown County Jail was not trained and
knowledgeable about jail policy that affected inmate access to health care
and the provision of health care to inmates of the main jail and the
Huber Work Release Center.

Nurse Emily Blozinski testified she did not know where the Brown
County Jail policies were, did not review them or look at them (Blozinski
Deposition, p 98). She was not trained on Brown County Jail policies at
any time during her employment at the jail. Blozinski testified she was

41

not trained on CCS policies, and did not review CCS policies when she was first employed by CCS (Blozinski Deposition, p 98).

Nurse Jessica Denissen testified she was not familiar with and did not access Brown County Jail policies (Denissen Deposition, p 48). She had not been trained to prioritize inmate medical requests and did not know if there was a policy or practice that HSU needed to follow to respond to a medical slip from an inmate in a timely manner (Denissen Deposition, p 42). She did not recall being trained about "no-miss" medications, a medication verification policy, or other CCS policies (Denissen Deposition, pp 91 – 92). She did not know anything about the Huber inmate handbook or what information was in the handbook regarding medical care (Denissen Deposition, p 90).

Nurse Jessica Jones was not familiar with the Brown County Jail policies. She testified she followed CCS policies (Jones Deposition, p 115). In 2016 she was not required to familiarize herself with Brown County policies (Jones Deposition, p 115).

Nurse Blozinski was not provided any training on how to access or review the suicide screening form of an inmate at Brown County Jail (Blozinski Deposition, p 47, 52).

Nurse Denissen did not know suicide screenings were done and had not ever reviewed a Suicide Screening Questionnaire (Denissen Deposition, p 40). She testified that she only dealt with medical and not

with mental health as mental health was separate (Denisses Deposition, p 53).

Nurse Jones simply did not bother to review Ruth Freiwald's medical chart including the Suicide Screening Questionnaire as she did not think it was something she needed to know.

Nursing staff did not receive sufficient training to identify an inmate who was a suicide risk, suicidal, or had mental health issues. Therefore, an integrated treatment approach for inmates with mental health issues did not occur. Nurse Denissen testified that she only dealt with medical issues as mental health was separate.

Nurse Blozinski testified she received no training from CCS or Brown County on dealing with inmates who had mental health issues (Blozinski Deposition, pp 100-101). She received no training from CCS or Brown County on dealing with inmates noted as suicide risks (Blozinski Deposition, p 101).

Nurse Jones received no training in 2016 regarding suicide. The first notation on her training record of any suicide training through Wellpath or CCS was in August of 2017. Nurse Jones testified that in 2016 HSU had no role in determining whether an inmate was a suicide risk (Jones Deposition, p 125); medical would not learn about inmates identified as suicide risks; mental health would (Jones Deposition, pp 125-126).

43

Nurse Jone testified she received no training regarding medication withdrawal (Jones Deposition, p 145). No training relating to withdrawal of medications (Jones Deposition, pp 146-147) was recorded on her training summary despite her report that Huber inmates come back from work or school, go into detox after using benzodiazepine medication and HSU is contacted (Jones Deposition, p 185).

It is not reasonable to believe that jail staff could function effectively and accurately if they were untrained and unaware of facility policy. While the failure of training at the Brown County Jail created a knowledge vacuum for the nursing staff and minimized the ability to integrate care resources, it did not absolve the nursing staff from following and adhering to Standards of Professional Nursing Practice including assessment, diagnosis, planning, implementation and evaluation of nursing care and to the Code of Ethics for Nurses (American Nurses Association). Medical staff was responsible for assessment of Ruth Freiwald's serious medical needs, ensuring that her medication was provided, her health status was monitored and her safety needs were met.

## IV. **Conclusion**

Nursing staff, including Emily Blozinski, LPN, under the supervision of Nurse Jones, failed to take basic preventative measures to reduce the likelihood that Ruth Freiwald's medical problems, problems

44

that were stable upon her booking into the Brown County Jail, developed into a catastrophic condition. Nurses Blozinski and Jones failed in their respective capacities to follow preventative measures to obtain essential clinical information, provide care and treatment that was indicated and ensure that health care was actually available and accessible to inmates such as Ruth Freiwald who had serious medical needs.

Nurse Jones failed to hold nursing staff accountable for their actions and failures to act. Health care staff did not provide care that was ordered or needed. A culture and practice of deliberate complacency and indifference to the inmate's serious medical needs was permitted and accepted, and was actually demonstrated by the nursing director who was also responsible for directly providing care. Staff was insufficiently trained, failed to know or follow policy, ignored Ruth Freiwald's requests for health care, failed to provide the care that was actually ordered and failed to provide the care and treatment that was obviously necessary for her health, well-being and safety. Nursing staff refused and failed to address Ruth Freiwald's serious medical needs.

Respectfully Submitted,

Suzanne L. Ward

Suzanne L. Ward RN, MS, LNC
November 26, 2019